Kenneth O. BESS, Appellant,

v.

AGROMAR LINE, Appellee.

No. 74–2221.

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1975.

Decided July 7, 1975.

C. D. Hopkins, Jr., North Charleston, S.C. (E. Graydon Shuford, Decatur, Ga., on brief) for appellant.

B. Allston Moore, Jr., Charleston, S.C. (Buist, Moore, Smythe & McGee, Charleston, S.C., on brief) for appellee.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and RUSSELL, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Appellant, Kenneth O. Bess, brought this suit in admiralty seeking to recover damages for injuries suffered by him while engaged in loading a ship, owned and operated by Agromar Line, appellee. The complaint predicated the claim of liability upon the doctrine of seaworthiness and principles of negligence. The district court granted Agromar Line's motion to strike all references to the doctrine of seaworthiness from the complaint pursuant to the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972 [1] which abolished the doctrine of seawor-

thiness as a basis for liability of a shipowner to a longshoreman.[2] The trial of the case proceeded upon negligence principles. At the close of the plaintiff's case the district court granted the defendant's motion for an involuntary dismissal with prejudice, concluding that there was no evidence of negligence on the part of the defendant. This appeal followed.

On August 28, 1973, Kenneth O. Bess was employed as a longshoreman by Southeastern Maritime Company, an independent stevedoring contractor, which had been hired to perform stevedoring work in loading cargo aboard the vessel M/V Bueno. Bess was assigned to work inside the lower hold of the No. 2 hatch, stacking cargo. The cargo consisted of bales of paper pulp which were to be stacked in tiers in the hold. The bales, which weighed approximately five hundred pounds each, were lowered by winch into the hatch and deposited in the square of the hatch; the longshoremen, working in pairs, would "manhandle" each bale into the stowage area. As each tier was completed, the longshoremen would begin stacking additional tiers.

Because the bales were not of uniform size and because of the configuration of the hold, the top surface of each tier was uneven and there were numerous spaces between bales. The evidence indicates that Bess requested that plywood dunnage be provided so that the tiers could be covered, thereby providing a better work surface upon which to stack the next tier. Bess directed his request to the "hatch tender," an employee of the independent stevedoring contractor. No

---

1. Public Law No. 92–576.

2. 33 U.S.C. § 905(b), as amended, provides, in pertinent part, as follows:

   In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel . . . .. If such person was employed by the vessel to provide stevedoring services, no such action shall be permit-

   ted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. . . . *The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.* The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter. (Emphasis added).

dunnage was supplied but the loading continued.

At approximately 3:30 p. m., as Bess and his partner began stacking bales on the third tier, Bess accidentally placed his foot in one of the spaces between the bales of the lower tier. Bess fell, causing the bale to fall on him and, as a result, he suffered severe back injuries.

Bess sued the shipowner, Agromar Line, alleging that his injuries were caused by the negligence of the shipowner and the unseaworthiness of the vessel. As previously noted, the district court struck the allegations of unseaworthiness since it correctly concluded that the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972 precluded recovery based upon allegations of unseaworthiness.[3] Bess has continued to prosecute his claim for damages based upon two allegations of negligence. Specifically, he alleges that Agromar was negligent in failing to provide a safe place for the longshoremen to work and in failing to provide dunnage.

Bess contends that each tier of bales should have been covered with sheets of plywood dunnage so that a smooth work surface would be available upon which to work while stacking the next tier of bales. It is clear that the failure to use such plywood dunnage exposed the longshoremen working in the hold to a risk of injury. Bess claims liability of the shipowner for injuries sustained in this allegedly unsafe place based upon what he characterizes as the shipowner's negligent breach of its nondelegable duty to provide a safe place to work to all who come aboard its vessel. There can be no question that the law allowed such actions prior to the 1972 Amendments to the Act. *Venable v. A/S Det Forenede Dampskibsselskab,* 399 F.2d 347 (4 Cir. 1968); *Boleski v. American Export Lines, Inc.,* 385 F.2d 69 (4 Cir. 1967). Therefore, it appears necessary to determine whether the absolute, nondelegable duty to provide a safe place to work is recognized under negligence principles and the extent to which the 1972 Amendments to the Act have modified that duty.

■■ It is clear that the shipowner's traditional absolute liability for breach of the nondelegable duty to provide those who come aboard its vessel a safe place in which to work is an outgrowth of the doctrine of seaworthiness[4] and differs significantly from the concept of negligence.[5] The 1972 Amendments to

---

3. *See* note 1, *supra.*

4. The relation of the absolute nondelegable duty to provide a safe place to work to the doctrine of seaworthiness is indicated in the following passage from Judge Parker's opinion in The State of Maryland (Marshall v. Manese), 85 F.2d 944 at 947 (4 Cir. 1936):

> The scope of the ancient maritime lien was unquestionably broadened when liability to seamen for injuries arising on account of unseaworthiness and defective appliances was recognized. As thus broadened, it covers liability arising from failure to discharge most of the nonassignable duties of the master recognized at common law, i. e., failure to provide a safe place to work, failure to provide safe and suitable appliances to work with, failure to keep machinery and appliances in safe order and condition, failure to provide a sufficient number of competent fellow servants to perform the work, etc.

   . . .
   This circuit has, at times, used the term unseaworthy to describe a place on a vessel which is unsafe for the work to be performed.

*See, e.g.,* Venable v. A/S Det Forenede Dampskibsselskab, 399 F.2d 347, 353 (4 Cir. 1968). Of course, it may constitute negligence to provide an unsafe place for the anticipated work, but that determination must be based upon negligence principles rather than the concept of a nondelegable duty with absolute liability. *See* note 5 *infra.*

5. The distinction between the proof necessary to sustain a recovery under the doctrine of seaworthiness and the proof necessary to sustain a recovery under the concept of negligence was discussed in Boleski v. American Export Lines, Inc., 385 F.2d 69, 73–74 (4 Cir. 1967). In that case longshoremen were working in a hold which had become slippery as a result of soap which had been applied to the cargo skids by the longshoremen to facilitate moving and storing the cargo. Although the court there spoke in terms of unseaworthiness and negligence, it would appear that the unseaworthiness allegation related to what the plaintiff in the instant case characterizes as an absolute liability for breach of the nondelegable duty to provide a safe place to work. To

the Act specifically preclude an employee of an independent stevedoring contractor from bringing a suit against the vessel "based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."[6] We must, therefore, determine whether the removal of the application of the doctrine of seaworthiness as to longshoremen will, under the facts of this case, also preclude an action based upon the nondelegable duty to provide a safe place to work or a breach thereof.

The history and purpose of the 1972 Amendments to the Act have been fully and carefully examined in the reported cases;[7] we will not undertake a detailed discussion of those decisions. The House Report on the bill which proposed those amendments announced an intention to base the liability of a vessel and its owner to longshoremen working on the vessel upon negligence principles "rather than the no-fault concept of seaworthiness." The following pertinent passage from the legislative history of the amendments fully explains how this was to be accomplished:

> Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of the employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness. This would place vessels in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits.

The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and *not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as "unseaworthiness," "nondelegable duty," or the like.*

. . .

Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action *where it knows or should have known about a dangerous condition.*

. . .

Accordingly, the bill expressly prohibits such recovery, whether based on an implied or express warranty. *It is the Committee's intention to prohibit such recovery under any theory including, without limitation, theories based on contract or tort.* . . .

House Report No. 92–1441, 92d Congress, 2d Session (1972), U.S.Code Cong. & Admin. News 1972, pp. 4698, 4703. (Emphasis added.)

■■■ There is no allegation or evidence that the vessel was unseaworthy or that the hold was not a safe place to work when the vessel was turned over to the independent stevedoring contractor.[8]

---

the extent that *Boleski* discussed the liability of the shipowner under negligence principles it remains pertinent despite the 1972 Amendments to the Act.

**6.** Public Law No. 92–576, as amending 33 U.S.C. § 905(b).

**7.** Ramirez v. Toko Kaiun K.K., 385 F.Supp. 644, 648–653 (N.D.Cal.1974); Lucas v. "Brinknes" Schiffahrts Ges. Franz Lange, 379 F.Supp. 759, 765–769 (E.D.Pa.1974).

**8.** We do not intend to suggest that the shipowner's duties to the longshoremen ended

It appears that the crew was absent from the vessel during the entire loading operation. The allegedly unsafe condition was the result of the loading process which was under the sole control of the independent stevedoring contractor. The crew of the vessel and its owner were not aware of the allegedly unsafe condition and could not reasonably have learned of it.[9] "If the defendant could be held liable for the condition of the . . . [vessel] or a breach of duty to provide the plaintiff with a safe place to work under the facts in this case, the 1972 Amendments to the Longshoremen's Compensation Act, 33 U.S.C. Sec. 905(b) would be circumvented and would negate precisely the purpose of the amendment which was to eliminate unseaworthiness as the basis for a cause of action." *Citizen v. M/V Triton,* 384 F.Supp. 198, 201 (E.D.Tex.1974). Whether the traditional maritime duty of a shipowner to provide those who come aboard his vessel with a safe place to work is described as a "nondelegable duty" or as "absolute liability" or by any other judicial nomenclature, it is based upon principles of "no-fault" liability rather than negligence and falls within that group of "special maritime theories of liability" which Congress has chosen to deny to longshoremen. "To adopt the non-delegable duty proposed by plaintiff would be to go beyond the extent of the remedy envisioned by Congress . . . ." *Ramirez v. Toko Kaiun K.K.,* 385 F.Supp. 644, 653 (N.D.Cal.1974).

■ Bess insists that, even if this court rejects the theory of absolute liability predicated upon the nondelegable duty to provide a safe place to work, recovery may be based upon a traditional theory of negligence. He claims that the shipowner had a duty to provide suitable plywood dunnage to be used in covering each tier of bales. It is argued that the shipowner breached that duty and, as a result, contributed to the unsafe condition which proximately caused plaintiff's injury. Since that theory of liability is based upon traditional negligence principles, it is clearly permitted by the 1972 Amendments to the Act. However, before that theory of liability could be submitted to the jury, the plaintiff must present evidence that the shipowner had a duty to provide the plywood dunnage. The district court dismissed that aspect of the case, noting that "there is no evidence before this court that the defendant was under any duty to provide dunnage, or to have someone there to make it available, or that there was the practice in the trade to provide dunnage."

On appeal Bess contends that the defendant had a duty *as a matter of law* to provide dunnage. Although he concedes that no request for dunnage was made to the crew of the vessel he argues that the need for dunnage was foreseeable and that the failure to provide the dunnage was negligence. We agree with the district court that this theory of liability also fails—not because of the absence of foreseeability, for that would be a question of fact for the jury, but because there was no evidence of any duty on the shipowner to provide dunnage under the facts of this case. The cases cited by Bess in support of his

when it turned the vessel over to the stevedore in a safe condition. Subsequent duties may arise depending upon the facts of the case. *See* White v. United States, 400 F.2d 74 (4 Cir. 1968) (Although *White* was a pre-amendment case it is pertinent here because it proceeded upon negligence principles; the doctrine of seaworthiness was not applicable because the vessel in question was not in navigation at the time of the accident.).

9. Under the doctrine of seaworthiness and the related absolute nondelegable duty to provide a safe place to work "the shipowner's actual or constructive knowledge of the unseaworthy condition . . . [was] not essential to his liability." Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960). The 1972 Amendments to the Act, as quoted in the text have changed this proposition with respect to claims by longshoremen against shipowners. Hite v. Maritime Overseas Corp., 380 F.Supp. 222 (E.D.Tex.1974); Ramirez v. Toko Kaiun K.K., 385 F.Supp. 644 (N.D.Cal.1974).

contention[10] were cases arising prior to the 1972 Amendments to the Act and clearly proceeded upon the doctrine of seaworthiness or upon the nondelegable duty to provide a safe place to work. Under those theories of liability, the shipowner would be liable where the absence of dunnage created an unseaworthy or unsafe condition *regardless of whose duty it was to supply the dunnage.* In view of the legal principles under which those cases were decided, we conclude that the recovery by longshoremen against shipowners in those cases because of the absence of dunnage does not imply, as a matter of law, a duty on the shipowner to provide dunnage. The evidence in the record does not establish the necessary basis upon which a duty could be imposed upon the shipowner to provide dunnage as a matter of law under negligence principles. We have been unable to find any reported case which has imposed such an implied legal duty under similar circumstances.[11] Since there was no evidence of such duty upon the shipowner the district court acted properly in granting the defendant's motion for an involuntary dismissal with prejudice as to this aspect of the case.

Bess is entitled to file a claim for compensation for his injuries pursuant to the schedule of compensation for disability provided by the Act. Since the shipowner has not been shown to be guilty of any act or omission constituting negligence, the injured longshoreman is not entitled to a second recovery against the shipowner under negligence principles. Accordingly, the dismissal, with prejudice, of the plaintiff's case is affirmed.

*Affirmed.*

---

**10.** Venable v. A/S Det Forenede Dampskibs-selskab, 399 F.2d 347 (4 Cir. 1968); Hurst v. Central Gulf Steamship Corp., 267 F.Supp. 65 (E.D.La.1967).

**11.** We have, however, found cases decided since the enactment of the 1972 Amendments to the Act which appear to reject, under similar circumstances, the proposition that a shipowner has a duty to provide dunnage. Fedison v. Vessel Wislica, 382 F.Supp. 4 (E.D.La. 1974); Citizen v. M/V Triton, 384 F.Supp. 198 (E.D.Tex.1974).