Stanley EDMONDS, Appellee,

v.

COMPAGNIE GENERALE TRANSATLANTIQUE, Appellant (two cases).

Stanley EDMONDS, Appellant,

v.

COMPAGNIE GENERALE TRANSATLANTIQUE, Appellee.

Nos. 76–1545–76–1547.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 10, 1976.

Decided May 6, 1977.

Rehearing and Rehearing En Banc Granted June 3, 1977.

C. Arthur Rutter, Jr., Norfolk, Va. (Breit, Rutter & Montaga, Norfolk, Va., on brief), for appellant in No. 76–1545 and No. 76–1547 and for appellee in No. 76–1545.

Charles F. Tucker, Norfolk, Va. (John B. King, Jr., Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief) for appellant in No. 76–1545 and for appellee in No. 76–1546 and No. 76–1547.

Randall C. Coleman, Baltimore, Md. (Warren B. Daly, Jr., Baltimore, Md., on brief), for amici curiae.

Before BUTZNER, WIDENER, and HALL, Circuit Judges.

WIDENER, Circuit Judge:

This action arises under the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act of 1927,[1] a remedial statute governing suits by longshoremen injured upon navigable waters in the course of their employment. Plaintiff Stanley Edmonds, a longshoreman employed by Nacirema Operating Company, which was not a party to this case, was injured while unloading rolling cargo containers from the S. S. Atlantic Cognac, a vessel owned by defendant Compagnie Generale Transatlantique, at Portsmouth,

---

1. 33 U.S.C. § 901, et seq.

Where used in the opinion, stevedore means the employer as contrasted to the longshoreman.

The stevedore has not until this time participated in this case.

Virginia, on March 3, 1974. Edmonds received statutory compensation benefits in excess of $20,000 from his employer under the statute and, as authorized by 33 U.S.C. § 905(b),[2] instituted an action for damages against the vessel as a third party based upon its alleged negligence. A jury trial was held in March 1975, resulting in a verdict for Edmonds in the amount of $97,500. Subsequently, however, the district judge granted defendant's motion for a new trial, based upon errors committed by the court in charging the jury.

A second trial was held in December 1975, again resulting in a verdict in Edmonds' favor, this time for $100,000. In response to a special verdict submitted to the jury at the conclusion of the second trial, it was found that Edmonds was 10% contributorily negligent; that the defendant vessel's negligence contributed 20% to the injuries sustained, and that the stevedore employer's negligence contributed 70%. Despite this finding of comparative fault on the part of the stevedore as well as the plaintiff, however, the district court entered judgment against the vessel owner for $90,000, reducing the award only to the extent of the plaintiff's comparative negligence.[3]

The issues presented for our consideration are these: (1) Did the district court abuse its discretion in ordering a new trial

on the basis of instructions propounded to the jury that, in the court's opinion, lacked evidentiary support and imposed a greater duty on the defendant than authorized by the Longshoremen's Act? We think not, and affirm the district court's grant of a new trial. (2) Should the district court have reduced Edmonds' recovery against the vessel owner to an extent commensurate with the vessel's degree of comparative fault in causing the injuries sued upon? This is an issue not previously addressed in this circuit. The district court was at first inclined to order such a reduction, but declined to do so when the Court of Appeals for the Ninth Circuit held to the contrary, reversing a district court judgment in *Shellman v. United States Lines, Inc.*, 528 F.2d 675 (9th Cir. 1975). We respectfully do not agree with the Ninth Circuit, and now hold that a more equitable distribution of liability, and one more consistent with the amended act, is achieved by limiting the vessel owner's liability to the extent of its fault, in this case $20,000, plus the amount of the stevedore's lien as set forth below.[3a]

I

Edmonds' duties aboard the Atlantic Cognac on the day of his injury consisted of removing chains and jacks used to secure large, movable cargo containers in the hold of the vessel. At the direction of a member

2. 33 U.S.C. § 905(b):

(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of sea-

worthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

3. This reduction of the award to the extent of the plaintiff's negligence was proper on the part of the district court and is unquestioned by the parties to these appeals. See *Pope and Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

3a. While the issue was expressly reserved, the Third Circuit recently discussed some of the authorities and policy pros and cons of allowing a jointly negligent vessel an equitable credit to the extent of the stevedore's fault in *Marant v. Farrell Lines, Inc.,* No. 76–1383 (3d Cir. 1977) (compare majority and concurring opinions and authorities cited).

of the vessel's crew, Edmonds went behind one of the containers to remove a jack. The rear of the container was about two feet from the side of the ship. As Edmonds was performing this task, a vehicle called a hustler, used to tow the rolling containers off the ship, attempted to engage the container that Edmonds was working behind, causing it to roll backward. Edmonds was pinned between the container and the side of the ship. His allegations of negligence on the part of the vessel consisted of permitting the rolling containers to be loaded on the Atlantic Cognac by stevedores at Rotterdam without applying the containers' air brakes, and ordering Edmonds to remove the jack from behind a container while a hustler was ready to engage it.

■ Defendant's motion for a new trial centered around two instructions given the jury by the district court, one of which is copied below.[4] It is necessary to discuss only the first of these, Charge A, which instructed that, "defendant has the duty of seeing that the cargo is properly stowed."

The district court was not in error in concluding that this charge could be understood as imposing upon the vessel a duty that is no longer permissible under the 1972 amendments to the Longshoremen's Act. As we held in Bess v. Agromar Lines, 518 F.2d 738 (4th Cir. 1975), a non-delegable duty to provide a safe place to work is an "outgrowth of the doctrine of seaworthiness and differs significantly from the concept of negligence." 518 F.2d at 740 (citations omitted). The 1972 amendments expressly abolished the seaworthiness concept as a basis for imposing liability upon a vessel for injuries to a longshoreman.[5]

Only negligence remains under the statute as a basis for such liability, the same duty to exercise ordinary care as in land-based injury cases.[6]

The stowage of the cargo at Rotterdam was under the exclusive control of the Dutch stevedore. There was no evidence of knowledge on the part of the defendant of any dangerous condition, nor that, in the exercise of ordinary care, such knowledge should have been acquired. The instruction that "defendant has the duty of seeing that the cargo is properly stowed" could easily have had the effect of subjecting the vessel to an outmoded theory of liability, that of a non-delegable duty of providing a safe place to work. See Bess, supra. In these circumstances, the grant of a new trial was entirely proper. The district judge was in a better position than are we to judge the meaning and connotation of the words of his own instruction when read in context with the balance of the charge, and we cannot say setting aside the verdict was an abuse of discretion.

## II

■ In the 1972 amendments, Congress sought to strike a balance between the relative rights and liabilities of the three parties generally involved in litigation under the Longshoremen's Act, the injured longshoreman, his stevedore employer, and the owner of the vessel. While statutory compensation payments (increased considerably in 1972) constitute the stevedore's exclusive liability to its injured employee, irrespective of fault,[7] a vessel whose negligence was a

---

4. "Charge A—A vessel owner, under admiralty law, owes the duty of exercising ordinary care toward all persons lawfully aboard the vessel, and the defendant has the duty of seeing that the cargo is properly stowed and he is charged with whatever knowledge it, the defendants, would have acquired as to the nature and characteristics of the cargo carried on the vessel by the exercise of ordinary care to acquaint themselves with the facts, and the defendant was bound to take reasonable precautions in light of such knowledge to protect longshoremen

like the plaintiff, Stanley D. Edmonds, who was employed to assist in unloading the cargo."

5. 33 U.S.C. § 905(b). See note 2, supra.

6. It was the intent of Congress in 1972 to place vessels "in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits." H.R.Rep. No. 92–1441 92d Cong., 2d Sess. (1972), 1972 U.S.Code Cong. & Admin.News at p. 4703.

7. 33 U.S.C. §§ 904, 905(a).

proximate cause of the injury may be held liable to the longshoreman for damages.[8]

In contrast to pre-1972 practice,[9] the vessel is no longer subject to suit by a longshoreman for breach of a warranty of seaworthiness, an absolute, non-delegable duty to provide a safe place to work.[10] See *Bess*, supra. It is liable only for its own negligence. And, in return, the negligent vessel may no longer bring suit against the stevedore whose joint negligence contributed to the injury based on breach of a warranty to perform duties in a workmanlike manner. Such suits had been held not to be precluded by the exclusivity provision of 33 U.S.C. § 905(a), as the statute was then written, in *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Co.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). It was the intent of the 1972 amendments to eliminate this circuitous system of litigation and to restore to the stevedore the exclusivity of liability for compensation payments under the statute only. See H.R.Rep. No. 92–1441, 92d Cong., 2d Sess. (1972), 1972 U.S.Code Cong. and Admin.News, p. 4698.

■ It is this remedial exclusivity, however, that gives rise to the present problem of whether and how to apportion liability in cases in which the stevedore and the vessel are jointly negligent in causing the injuries sued upon. While admiralty law has, over the years, demonstrated considerable flexibility in adapting to rules of divided damages when more than one party has been at fault in causing injury, *Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc.*, 417 U.S. 106, 110, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974), such a rule may not obtain when one wrongdoer enjoys statutory immunity. The Longshoremen's Act does not provide for contribution against a jointly negligent stevedore, and the Supreme Court has held that to engraft such a remedy judicially could disrupt the balance of rights and liabilities Congress sought to achieve in the statutory scheme. *Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952); see *Cooper Stevedoring*, supra.[11] Therefore, under the statute, if the 20% negligent vessel in the present case were held liable for the full $90,000 judgment, it would have no recourse against the 70% negligent stevedore.

■ In eliminating the vessel's cause of action in contract against the stevedore approved in *Ryan*, Congress intended as a *quid pro quo* that vessels sued under the Act would no longer be liable for the negligence of stevedores, as they often had been pursuant to the seaworthiness doctrine. It was accordingly perceived that the *Ryan* action would no longer be necessary.[12] The

---

**8.** 33 U.S.C. § 905(b).

**9.** A more thorough analysis than will be attempted here of the Act prior to 1972, as well as of the historical backdrop of admiralty law against which the Act has operated, can be found in *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759 (E.D.Pa.1974). See also Shorter, *In the Wake of the 1972 Amendments to the L. & H.W.C.A.: the Vessel's Rights Against the Stevedore*, 7 *J. of Maritime Law and Commerce* 671 (1976); Cohen and Dougherty, *The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: An Opportunity for Equitable Uniformity in Tripartite Industrial Accident Litigation*, 19 *N.Y.L. Forum* 587 (1974).

**10.** The availability of relief against a vessel on account of a vessel's unseaworthiness was extended to longshoremen performing work aboard ship in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

**11.** *Cooper Stevedoring* made clear that the rule of noncontribution enunciated in *Halcyon* is limited to cases in which the party against whom contribution is sought enjoys a statutory immunity from tort liability. Thus, contribution was permitted against a stevedoring company which was a joint tortfeasor, but which was not the employer of the injured longshoreman and therefore had no statutory liability or immunity.

*Cooper* arose before the 1972 amendments, but in dicta it indicates that even after those amendments the *Halcyon* days are not over and that case remains "good law on its facts."

**12.** "Since the vessel's liability is to be based on its own negligence, and the vessel will no longer be liable under the seaworthiness doctrine for injuries which are really the fault of the stevedore, there is no longer any necessity for permitting the vessel to recover the damages for which it is liable to the injured worker from the stevedore or other employer of the work-

House Report discussing elimination of unseaworthiness as a basis of liability reflects this Congressional determination that the liability of a vessel was to be confined to its own negligence.[13] Congress did not intend to continue to subject vessels to liability for the negligence of stevedores, while eliminating their only available means of recourse.

We fail to see how a simple reduction in a vessel's monetary liability will result in the type of circuitous actions Congress sought to eliminate in 1972, as was suggested by the court in *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759 (E.D.Pa.1974). Nor do we accept the proposition advanced by the Ninth Circuit in *Shellman,* supra, that an equitable credit somewhat like we adopt here imposes an unjustified burden on injured longshoremen. They have no inherent right to recover from a vessel damages caused by the negligence of a stevedore. To the extent the longshoreman receives a somewhat lesser amount than he otherwise would have, his complaint lies not with the result reached in this case, but more basically with the compensation scheme of the Act that prevents him from recovering damages from his employer, for a concomitant of the stevedore's no-fault liability is the exclusivity of the compensation remedy against it. Thus, even as the longshoreman receives a lesser recovery, he benefits from one of the Act's many trade-offs; he becomes entitled to statutory benefits without having to prove fault on the part of anyone. As will be later apparent, he also benefits from the negligence of the vessel, but only to the extent of its own fault.

It has also been suggested that any reduction of liability to the benefit of a negligent vessel would amount to a form of contribution against the jointly negligent stevedore prohibited by the Supreme Court in *Halcyon.* See *Shellman,* supra; *Landon v. Lief Hoegh & Co.,* 521 F.2d 756 (2d Cir. 1975). The only apparent circumstance in which this could be true would be where the ability of the stevedore to recoup its compensation lien,[14] acquired pursuant to its right of statutory or equitable subrogation in the plaintiff's recovery, see *The Etna,* 138 F.2d 37 (3d Cir. 1943), would be diminished on account of the vessel's reduced liability to less than the amount of the lien as apparently may be true here. Our solution also avoids that result except when the total longshoreman's judgment is less than the lien. Cf. *Federal Marine Terminals v. Burnside Shipping Co.,* 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969). See *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).

While the stevedore is not a party to this case, its lien looms large in any decision we may make here. This is so because the statute, 33 U.S.C. § 933(b), provides that, after an award, acceptance of compensation by the longshoreman operates as a statutory assignment of all the right of action of a longshoreman against the vessel unless the longshoreman shall commence an action against the vessel within six months after the award, and the rule of *The Etna,* supra, which seems generally accepted, provides for the equitable subrogation of a stevedore, to the extent of compensation payments made, in any recovery made by the longshoreman against the vessel in all events. If we were left purely to our own devices, an attractive holding might be to bar the stevedore from asserting an equitable lien if it were negligent, but we think this would be an artificial distinction to announce such a rule when the statute has in terms provided for an assignment after an award in some instances. Such a holding by us might well lead to the stevedore's

---

er." H.R.Rep. No. 92–1441, 92d Cong., 2d Sess. (1972), 1972 U.S.Code Cong. & Admin. News at p. 4704.

**13.** "Persons to whom compensation is payable under the Act retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-created doctrine of unseaworthiness. Thus a vessel shall not be liable in damages for acts or omissions of stevedores or employees of stevedores subject to this Act." Id. at p. 4703.

**14.** Compensation payments made to the plaintiff prior to judgment.

withholding of voluntary payments after an injury, knowing that after an award its lien would at least many times in effect be perfected by statute. Again, were the much older form of procedure still in effect, that the longshoreman had to elect which remedy to pursue, we might have less difficulty with the case, for a voluntary election on the part of the longshoreman might justify lowered payments to him which otherwise might seem to be an injustice. Under 33 U.S.C. § 933(a), however, the longshoreman "need not elect."

In arriving at our decision, we first have to keep in mind the statute. 33 U.S.C. § 933(b) preserves a lien to the stevedore in many instances. See also *The Etna,* supra. 33 U.S.C. § 905(b), as amended in 1972, preserves to the longshoreman a right "caused by the negligence of a vessel." We think the stevedore's lien and the right against the vessel for negligence should be preserved and should not be diminished so far as possible except by the longshoreman's contributory negligence. We do not think the statute contemplates a reduction of the stevedore's lien on account of its contributory negligence.

With these principles in mind, we think that two recent cases offer a solution to the problem which is consistent with the intent of the statute, that is to say the preservation of the stevedore's lien, the preservation of the longshoreman's right of action for negligence against the vessel, and holding of the vessel only for its own negligence. The cases are *Cooper,* supra, and *United States v. Reliable Transfer Company,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).

Both of those cases trace the history of damages in admiralty cases more thoroughly than we will do here. Suffice it to say that we read them as emphasizing that courts of admiralty should formulate "flexible and fair remedies in the law maritime," *Reliable Transfer,* p. 409, 95 S.Ct. p. 1715. And in *Cooper* the court states: " . . . it is fair to say that application of the rule of damages between joint tortfeasors in admiralty cases has been as broad as its

underlying rationales." pp. 110–11, 94 S.Ct. p. 2177.

In the *Cooper* case, the court approved a divided damage award between a negligent vessel and a negligent stevedore when the longshoreman plaintiff was not an employee of the negligent stevedore. It is true that in *Cooper* the division of negligence by the court between the stevedore and the vessel was half and half, but that case followed the well established maritime rule of an equal division of damages upon a finding of concurrent fault, the law maritime at that time, and in all events in note 3 the court recited that the district court had divided the damages equally because it was "the only apportionment of fault it could reach on the evidence," and reserved the question of whether contribution should be based on an equal division of damages or should be relatively apportioned with the degree of fault.

Following *Cooper* came *Reliable Transfer* which departed from the traditional law maritime of an equal division of damages in cases of contributory fault and decided that in a collision or stranding case "liability for such damages is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault, or when it is not possible fairly to measure the comparative degree of their fault," p. 411, 95 S.Ct. p. 1715.

With those cases in mind, and keeping in view the statutory objectives and the Supreme Court opinions on the subject, we think the most just result in this case obtained, and one which is quite in keeping with the principles which we have cited, is one in which we preserve the stevedore's lien, we preserve the longshoreman's right of action against the vessel for negligence, both contemplated by the statute, and, so far as possible, only hold the vessel for its own negligence.

Accordingly, we are of opinion that a judgment against a vessel by a longshoreman in a case such as we have here, where

both the vessel and the stevedore are negligent, should be limited to a sum equal to that part of the whole measured by its own fault, here $20,000, plus any valid lien the stevedore may have on the recovery by the longshoreman, but of course not to exceed the whole amount of the possible award against the vessel, which here, for example, is $90,000. Since the stevedore has asserted no claim against the vessel, we do not consider any effect the 1972 amendments may have had on *Marine Terminals,* supra.

The judgment of the district court is accordingly vacated and the case is remanded with directions to enter judgment against the vessel in favor of the longshoreman in the amount of $20,000, and in the event, and only in the event, the stevedore asserts and proves in the district court a valid lien on the recovery of the longshoreman, to enter such additional judgment in favor of the longshoreman against the vessel in such amount, however subject to the lien of the stevedore.[15]

### VACATED AND REMANDED.

HALL, Circuit Judge, dissenting:

Respectfully, I dissent. It appears that the majority opinion is based upon principles of justice, equity, and fairness, instead of the provisions of the Act. The district court was correct in entering judgment for the plaintiff against the vessel owner only for the entire sum of $90,000 because the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* (especially 33 U.S.C. § 905(b) are clear and require this result. Even if the present rule is arguably a harsh one, the change should come from Congress, not the courts. *See Marant v. Farrell Lines, Inc.,* 550 F.2d 142 151–152 (3rd Cir. 1977, Van Dusen concurring).

Under the Act, as amended, the ship is to bear the entire responsibility for both its liability and that of the stevedore-employer.

**15.** The total of the stevedore's lien and the $20,000 judgment in favor of the longshoreman here will be less than $90,000, so we have no occasion to consider the result in the event they are greater.

I would, therefore, affirm. *Dodge v. Mitsui Shintaku Ginko,* 528 F.2d 669 (9th Cir. 1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Shellman v. United States Lines, Inc.,* 528 F.2d 675 (9th Cir. 1975), *cert. denied,* 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976); *Marant v. Farrell Lines, Inc., supra,* (dicta-Van Dusen concurring).

Our result here is not inconsistent with *Halcyon* because we have not required contribution from the stevedore, and with *Pope & Talbot* because any reduction in the vessel's liability is not at the expense of the stevedore.