577 F.2d 1153
 Stanley EDMONDS, Appellee,
v.
COMPAGNIE GENERALE TRANSATLANTIQUE, Appellant (three cases).
Stanley EDMONDS, Appellant,
v.
COMPAGNIE GENERALE TRANSATLANTIQUE, Appellee.
 Nos. 76-1545 to 76-1547.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 6, 1977.
Decided June 22, 1978.
 
 Charles F. Tucker, Norfolk, Va. (John B. King, Jr., Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellant in 76-1545, for appellee in 76-1546, and for appellant in 76-1547.
 Ralph Rabinowitz, for amicus.
 C. Arthur Rutter, Jr., Norfolk, Va. (John H. Klein, Breit, Rutter & Montagna, Norfolk, Va., on brief), for appellant in 76-1546, for appellee in 76-1545 and 76-1547.
 Randall C. Coleman, Baltimore, Md. (Warren B. Daly, Jr., Ober, Grimes & Shriver, Baltimore, Md., on brief), for amici curiae.
 Before HAYNSWORTH, Chief Judge, and WINTER, BUTZNER, RUSSELL, WIDENER, and HALL, JJ., sitting en banc.
 HAYNSWORTH, Chief Judge:
 
 
 1
 We have for decision the question of pro ration of damages payable by a shipowner to an injured longshoreman when the injury was occasioned by the combined negligence of the shipowner, the stevedore and the injured longshoreman. Our conclusion is that the ship may be required to pay that proportion of the total damages which matches its proportion of fault. We do not now decide what interest the stevedore has in the longshoreman's recovery, for the stevedore is not now a party to these proceedings.
 
 I.
 
 2
 While working as a longshoreman aboard a ship owned by Compagnie Generale Transatlantique, Edmonds was severely injured. A first trial resulted in a verdict in Edmonds' favor, but the district judge awarded a new trial because of errors in the charge. A second trial again resulted in a verdict in Edmonds' favor, and the damages were assessed at $100,000. The jury determined that the injuries were the result of concurrent negligence on the part of the stevedore, the ship and the longshoreman; the stevedore's negligence contributed 70% of the fault, the ship's 20% and the longshoreman's 10%.
 
 
 3
 With these determinations by the jury, the district judge concluded that the longshoreman was entitled to a judgment against the shipowner in the amount of $90,000. Because the longshoreman himself was found to have been 10% at fault, the $100,000 damage assessment was reduced by 10%. No reduction was allowed on account of the negligence of the stevedore.
 
 
 4
 The case was initially heard by a panel of this court. A majority of the panel held that the damage assessment should be further reduced on account of the contributory fault of the stevedore to the sum of $20,000, computed on the basis of the ship's contribution to the total fault, plus any amount which the stevedore should recoup from the longshoreman by virtue of the lien in its favor as a result of having made compensation payments to the longshoreman. A majority of the judges in regular service voted for rehearing en banc, and a majority of the en banc court now concludes that the shipowner can be required to pay no more than $20,000.
 
 
 5
 Before 1972 the exposure of ships to liabilities for injuries to longshoremen was comparatively slight except insofar as reparations for such injuries occasioned higher stevedoring costs. The ship was held to owe to a longshoreman a duty to provide a seaworthy ship, comparable to its duty to seamen, but if the unseaworthy, condition had been created by the stevedore, the ship was entitled to indemnity from the stevedore under an implied warranty of workmanlike service. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed.2d 1099 (1946); Ryan Stevedoring Co. Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).
 
 
 6
 Under that state of the law, heavy costs were imposed upon the stevedore. It was required to provide workmen's compensation benefits to an injured longshoreman in any event, and if the longshoreman sued the ship and was successful in obtaining a verdict on the basis of an unseaworthy condition created by his fellow workers, the stevedore was required to indemnify the ship, in effect paying to its employee the damage award.
 
 
 7
 In 1972 the Congress decided to change that. It amended the Longshoremen's and Harbor Workers' Compensation Act by greatly increasing the amount of benefits payable, without regard to fault, to injured longshoremen. It abolished the longshoreman's right of action against the ship on unseaworthiness claims, and it abolished the ship's right of contribution or indemnity from the stevedore. The right of action against the ship for injuries caused by the ship's own negligence, however, was expressly preserved, and the apportionment of the damages problem we face is the consequence of that preservation.
 
 
 8
 The critical section of the amended statute is § 905(b)[1] which reads:
 
 
 9
 In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of Section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.
 
 
 10
 If read in absolute terms, the first sentence and the second sentence are in conflict in every case in which fault is found on the part of both the ship and the stevedore. The first sentence says that if the injury is caused by the negligence of a vessel the longshoreman may recover, but the second sentence says he may not recover anything of the ship if his injury was caused by the negligence of a person providing stevedoring services. The sentences are irreconcilable if read to mean that any negligence on the part of the ship will warrant recovery while any negligence on the part of the stevedore will defeat it. They may be harmonized only if read in apportioned terms. The evident meaning and intention of the Congress was to provide for liability of the ship to the extent its fault contributed to the injury, while insulating it against liability to the extent that the stevedore's fault contributed to the injury. So read, the sentences are harmonious.
 
 
 11
 The longshoreman, looking to the many references in the statute and its legislative history to the principles of land based negligence law, would import into those references those principles of the common law which permit full recovery by an injured plaintiff against any single joint tort feasor, but that common law doctrine is mitigated in many states by the provision of rights of contribution or of indemnity from other joint tort feasors, or has been supplanted by a system of comparative negligence. In the 1972 amendments the Congress clearly provided that the ship was to receive no indemnity or contribution from the stevedore, and it is hardly rational to suppose that, without any right of indemnification, the Congress intended to impose a liability upon the ship for all damages suffered when the ship may have been only slightly at fault and the stevedore very greatly so. More importantly, the second sentence of § 905(b) seems a firm declaration that the ship should not be required to pay for injuries to the extent that they were caused by people providing stevedoring services.[2]
 
 
 12
 Our conclusion is consistent with the trend to expand the application of the doctrines of comparative negligence, and is reinforced by the policy considerations which underly that expansion. Those considerations were eloquently stated by Mr. Justice Stewart in his opinion for the Court in United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). We need not repeat them here, but they are wholly consistent with a reasonable reconciliation of the first sentence of § 905(b) and its successors.
 
 
 13
 From the longshoreman's point of view, this is not a harsh result. He is protected by a system of compensation payable to him, regardless of fault, and in amounts much larger than were provided prior to 1972. He has a right of action against the ship for damages to the extent that negligence of the ship contributed to his injury. Our holding is only that he may not recover from the ship damages attributable to the neglect or actions of his fellow longshoremen or others than the ship's crew.
 
 
 14
 We are aware, of course, that our decision today is in conflict with decisions in the Fifth and Ninth Circuits, see Samuels v. Empresa Lineas Maritimas Argentinas, 573 F.2d 884 (5th Cir. 1978); Shellman v. United States Lines, Inc., 528 F.2d 675 (9th Cir. 1975), cert. denied, 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976), Dodge v. Mitsui Shintaku Ginko K. K. Tokyo, 528 F.2d 669 (9th Cir. 1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). See also Hubbard v. Great Pacific Shipping Co. v. Monrovia, 404 F.Supp. 1242 (D.Ore.1975); Santino v. Liberian Distance Transports, Inc., 405 F.Supp. 34 (W.D.Wash.1975); Solsvik v. Maremar Compania Naviera, S.A., 399 F.Supp. 712 (W.D.Wash.1975). But see Croshaw v. Koninklijke Nedlloyd, B. V. Rijswijk, 398 F.Supp. 1224 (D.Ore.1975) and its discussion of the comparative negligence and "equitable credit" doctrines.
 
 II.
 
 15
 The parties urge us to decide the next and related question of the rights of the stevedore to the $20,000 fund payable by the ship as a result of our decision. It has a statutory lien upon the fund as a result of its payment of workmen's compensation benefits, and its right as lienor may be or may not be subject to adjustment as a consequence of the fact that the verdict was reduced to the extent that the stevedore's fault contributed to the injury. But the stevedore is not a party in this case and has not been heard from. The answer to the question will affect the stevedore involved here and other stevedores very substantially, and its rights should not be adjudicated without its presence.
 
 
 16
 We suggest that the shipowner pay the $20,000 fund into the court and interplead the stevedore and the longshoreman so that their relative rights might be determined in a proceeding in which each may be heard. In future cases, the stevedore might be made a party plaintiff so the rights of all parties may be adjudicated in one proceeding.
 
 III.
 
 17
 Edmonds appeals from the decision of the district court to grant a new trial after the initial verdict in his favor. We find no error in that decision and affirm it.
 
 
 18
 For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for the entry of judgment against the ship consistently with this opinion.
 
 
 19
 REVERSED AND REMANDED.
 
 K. K. HALL, Circuit Judge, dissenting:
 
 20
 I respectfully dissent.
 
 
 21
 The legislative history of the 1972 amendments to the L. & H.W.C.A. reveals beyond peradventure that congress intended to make a shipowner responsible for negligent injury to a longshoreman working aboard ship in the employ of a stevedore to the same extent a property owner on land would be responsible to an employee of his independent contractor.
 
 
 22
 The Committee believes that where a longshoreman or other worker covered under this Act is injured through the fault of the vessel, the vessel should be liable for damages as a third party, just as land-based third parties in non-maritime pursuits are liable for damages when, through their fault, a worker is injured.
 
 
 23
 The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned . . . .
 
 
 24
 The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land . . . .
 
 
 25
 In that connection, the Committee intends that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence, shall apply in cases where the injured employee's own negligence may have contributed to causing the injury.
 
 
 26
 H.Rep.No.92-1441, 92d Cong., 2d Sess., reprinted in (1972) U.S.Code Cong. & Admin.News pp. 4703-05.
 
 
 27
 The 1972 amendments to the L. & H.W.C.A., among other things, did the following: (1) increased employee's level of benefits, (2) eliminated the liability of the shipowner for warranty of seaworthiness, (3) placed the injured employee in the same position as an employee injured in non-maritime employment ashore, and (4) gave the employer-stevedore a statutory lien against plaintiff's recovery.
 
 
 28
 The first sentence of § 905(b) gives the employee a cause of action for negligence against the vessel. To recover, injury need not be caused solely by the negligence of the vessel, but may be based on any negligence which was a contributing proximate cause. This is not different from the right a land- based employee would have against the land owner. (Maritime law does give a shipowner the right to a reduction to the extent of the plaintiff's comparative negligence, 10% or $10,000 in this case.)
 
 
 29
 The second sentence is not in conflict with the first, but simply says that the plaintiff may not base his claim against the shipowner upon the negligence of the stevedore. This provision, likewise, is in line with land-based law, and is in perfect alignment with the first sentence which gives a right of action against the vessel for its own negligence. It is to be remembered that the longshoremen's workmen's compensation benefits do not depend upon the negligence of the stevedore, but, like workmen's compensation benefits for land-based workmen, are paid for injuries received on the job without proof of fault.
 
 
 30
 The common law did not permit division of damages among tortfeasors according to degrees of comparative negligence, and such change in the law should not come from the courts. Some common law states, by legislation, do permit comparative negligence among tortfeasors, but they are in the minority. Prosser, Law of Torts § 67, at 434-35 (4th Ed. 1971).
 
 
 31
 The 1972 amendments eliminate any right the vessel may have to recover over against its stevedore for damages it may have to pay to an injured longshoreman for injury aboard ship. The effect of this is to prevent contribution by the stevedore or diminution to the longshoreman for any benefits he may receive from the stevedore.
 
 
 32
 In the matter of the stevedore's lien, I believe that the stevedore, even though negligent, has the right to be compensated out of the recovery by the longshoreman and that he has a compensation lien protecting that right.
 
 
 33
 The majority opinion seeks to obtain the "most just result." I have no quarrel with a just result; however, it is not to be achieved in face of a constitutional act of congress. If inequities result from this statute, perhaps congress will make necessary changes to bring about more equitable results.
 
 
 34
 The district court decided this case in line with the decisions in Shellman v. United States Lines, Inc., 528 F.2d 675 (9th Cir. 1975), and Dodge v. Mitsui Shintaku Ginko K. K. Tokyo, 528 F.2d 669 (9th Cir. 1975). I believe these decisions are correct. See also Hurst v. Triad Shipping Co., 554 F.2d 1237 (3rd Cir. 1977).
 
 
 35
 Finally, the majority's decision to depart from the established law created by congress and interpreted by our sister circuits has profound practical and policy considerations for all parties to maritime injuries the longshoreman, the stevedoring company and the vessel owner.
 
 
 36
 For the longshoreman himself, the amount of his tort recovery now becomes totally dependent on a new and judicially created "situs test." From the border of Washington State past Texas, Louisiana, and north to Georgia, and from Delaware to Maine, the injured longshoreman recovers a full award against a vessel, reduced only by his own contributory negligence. The maritime areas of the states which comprise the Fourth Circuit now stand alone in their reduction of the longshoreman's damage award due to the negligence of the stevedoring company.
 
 
 37
 For the shipowners and stevedores, the result becomes equally anomalous. Shipowners, stevedoring companies and presumably the insurance industry which stands behind shipping, no matter where they are based, must all wear two hats one for all shipments in every other judicial circuit but ours and a very special hat for the Fourth Circuit and its shipping ports.
 
 
 38
 Thus, much more than a technical difference between our sister circuits is involved; this dispute should be resolved for the benefit of all parties, small and large alike.
 
 
 39
 I would affirm.
 
 WIDENER, Circuit Judge, dissenting:
 
 40
 I would decide the case in accordance with the previous opinion of the majority of the panel found in 558 F.2d 186 (4th Cir. 1977).
 
 
 
 [1]
 33 U.S.C. § 905(b)
 
 
 [2]
 There is nothing explicitly enlightening in the legislative history. The many references in the history to the principles of land-based negligence law are a slender reed upon which to base an inference of Congressional intent for the importation of the common law principle of complete responsibility on the part of each of several joint tortfeasors. The more likely inference from that language is a complete negation of the non-delegable duties concepts of admiralty law whether or not framed in terms of warranties of seaworthiness. See Hurst v. Triad Shipping Co., 554 F.2d 1237, 1247-1253 (3d Cir. 1977). Thus, it was repeatedly emphasized that the vessel would be chargeable only with its own negligence and that it would not be chargeable with the negligence of the employees of the stevedore. H.R.Rep.No. 92-1441, U.S.Code Cong. & Admin.News, 92d Cong. 2d Sess. pp. 4698, 4703, 4704 (1972). The language of the House Report strongly suggests an intention that the vessel be responsible only for its proportionate part of any negligence when there is also fault on the part of others. See Vickery, Some Impacts of the 1972 Amendments to the Longshoremen's & Harbor Workers' Compensation Act, 41 Ins. Counsel J. 63, 66 (1974). This reading of the legislative history suggests that Congress made a reasonable trade-off, in which the vessel's liability was limited to its proportion of the fault while in return the vessel owner was absolutely deprived of all rights of indemnity by or contribution from the stevedore