Marion J. **BOLESKI**, Appellee,

v.

**AMERICAN EXPORT LINES, INC.,**
Appellant.

**AMERICAN EXPORT LINES, INC.,**
Appellee,

v.

**ATLANTIC & GULF STEVEDORES,
INC., Appellant.**

**Nos. 9845, 9846.**

United States Court of Appeals
Fourth Circuit.

Argued May 5, 1965.

Decided Oct. 12, 1967.

Herbert F. Murray, Baltimore, Md. (Clater W. Smith and George Beall, and Smith, Somerville & Case, Baltimore, Md., on brief) for appellant Atlantic & Gulf Stevedores.

Southgate L. Morison, Baltimore, Md. (Ober, Williams & Grimes, Baltimore, Md., on brief) for appellant and appellee American Export Lines.

John J. O'Connor, Jr., Baltimore, Md. (O'Connor & Preston, Baltimore, Md., on brief) for appellee Boleski.

Before BOREMAN and BRYAN, Circuit Judges, and LEWIS, District Judge.

BOREMAN, Circuit Judge:

American Export Lines, Inc. (sometimes hereafter defendant or American), appeals from a jury verdict awarding plaintiff, Marion J. Boleski, $36,000 for injuries suffered while loading one of its vessels, the S.S. EXAMINER. The jury, on submission of ten special interrogatories, found that American was guilty of negligence and unseaworthiness but that plaintiff was guilty of contributory negligence which should reduce the amount of his damages by ten percent. American, as third-party plaintiff, had impleaded Atlantic and Gulf Stevedores, Inc. (sometimes hereafter Atlantic), Boleski's employer, as third-party defendant and was awarded complete indemnity. Both American and Atlantic appeal from the judgment in plaintiff's favor. No issue is raised as to the third-party action for indemnity. We affirm.

Plaintiff, a longshoreman in the employ of Atlantic, was directed to assist in the loading of tinplate in the hold of American's ship, the S.S. EXAMINER. After the packages of tinplate had been lowered into the hold it was necessary to stow them on a platform in the after end of the hold. The platform was eighteen feet wide, four to five feet high, and five feet deep. Each of the packages of tinplate weighed about one and one-half tons, each was two and one-half feet square and one foot high, and they were being raised onto the platform by use of a forklift. Due to the size of the packages it was difficult for the forklift operator to place them on the platform without assistance. Thus plaintiff and William King, a co-worker, assumed positions on top of the platform in order to slide the packages into place. The men used crowbars to move the large packages into the desired position and had laid two skids of dunnage on the platform about two feet apart. Plaintiff applied soap to the skids for lubrication purposes to facilitate the sliding of the packages.

After "barring" (as the operation is called in shipping jargon) five or six packages into position, plaintiff descended from the platform. However, he did not use the planks or ladder which he had employed in ascending; instead he jumped, feet first. When he touched the deck his feet slid from under him and he fell, sustaining the injuries complained of. Plaintiff stated that there were several pieces of soap on the deck. Two witnesses, King and Hillary, testified for plaintiff that the blades of the forklift scraped soap from the dunnage and that soap was lying in the area where plaintiff fell. Hillary also testified that he observed plaintiff's shoes and "that soap just stood out on the shoes like a sore thumb."

Captain Pellegrino, an expert witness for plaintiff, testified concerning methods for performing the work plaintiff was doing. He stated that "barring" was a recognized method but the use of soap was unsafe. Pellegrino was not cross-examined. Instead defendant was content to rely on its interposed objection concerning the witness' competency as an expert. The basis for this objection was that Pellegrino, by his own admission, had never served as a stevedore in the Baltimore harbor. Defendant introduced witnesses who testified that the use of soap in stevedoring operations of this nature was a common and widespread practice in Baltimore harbor. Defendant alleges that the admission of Pellegrino's testimony was error.

The admission or exclusion of expert evidence is within the broad discretion of the trial judge and his action is to be sustained unless manifestly erroneous. Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Stillwell and Bierce Manufacturing Co. v. Phelps, 130 U.S. 520, 527, 95 S.Ct. 601, 32 L.Ed. 1035 (1889); United States v. 60.14 Acres of Land, 362 F.2d 660, 663 (3 Cir. 1966).

An expert has been defined as one who has acquired special knowledge of the subject matter about which he is to testify, either by study of the recog-

nized authorities or by practical experience and who can assist and guide the jury in solving a problem which the jury is not able to solve because its knowledge is inadequate. 20 Am.Jur. § 783, p. 656. In Cranston Print Works Co. v. Public Service Co. of North Carolina, 4 Cir., 291 F.2d 638, 645 (1961), we approved the statement made in Padgett v. Buxton-Smith Mercantile Co., 262 F.2d 39 (10 Cir. 1958), that "expert testimony is admissible if it reasonably tends to aid the trier in the resolution of the decisive issue, and is not a mere guess or conjecture." 262 F.2d at 41.

■ In this case the witness, Pellegrino, had been going to sea for thirty years, had served in every capacity from seaman to captain, on all types of vessels, and had been manager and superintendent for two New York stevedoring companies. In working with the stevedoring companies, which handled general cargo, including tinplate, Pellegrino had supervised and directed large numbers of men. It would appear that he was well qualified as an expert and would be able to aid the jurors in determining whether an operation with which they were unfamiliar was conducted safely. The court concluded that since the witness was familiar with stevedoring in general he could testify as to the safety of the method here employed and that the jury could determine what weight to give to his testimony, taking into consideration the fact that he was unfamiliar with practices in the Baltimore area. We cannot say that under these circumstances the court's admission of the testimony of Pellegrino as an expert was manifestly erroneous. The safety of a stevedoring practice, no matter where performed, was within the expert's particular competence. If the method were unsafe in New York surely it cannot be seriously contended that a mere geographical change could render it safe.

In this respect the case at bar is analogous to Hayes v. United States, 367 F.2d 216 (10 Cir. 1966), where a defendant convicted of murder contended that a Kansas federal district court's admission of the testimony of the doctor who performed the autopsy was error-because he was only licensed in Missouri. Defendant pointed out that the Kansas statute required that the autopsy be performed by a "licensed physician." The court reviewed the qualifications and extensive autopsy experience of the witness and concluded he was competent to testify. The court reasoned that a person familiar with the human body was qualified to testify in this regard and the place in which he acquired such expertise had no bearing. Pellegrino's testimony was subject to cross-examination and rebuttal and the court instructed the jury that it could decide what weight, if any, to accord the testimony of witnesses. Therefore, we find no error in the admission of this expert testimony.

Defendant also asserts that it was error for the court to exclude the testimony of Mr. Proctor, a superintendent of the Bureau of Labor Standards. This witness was expected to testify, if permitted, that section 9.91(c) of the Safety and Health Regulations for Longshoring, which plaintiff had indicated would be introduced in evidence, did not apply to the use of soap. Section 9.91(c) is concerned with the general working conditions of longshoremen and provides: "[s]lippery conditions shall be eliminated as they occur." 29 C.F.R. 9.91(c) (1962). Plaintiff relied on this provision and the court instructed the jury that it could consider a violation of this section as evidence of negligence and unseaworthiness. The admission in evidence of regulations for such purpose was approved by this court in Provenza v. American Export Lines, Inc., 324 F.2d 660 (1963), cert. denied, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 971 (1964). The purpose of Proctor's proffered testimony was to mitigate the effect of plaintiff's evidence.

■ The court made inquiry out of the presence of the jury and ascertained that Proctor did not interpret the regulations but merely enforced them and that he was unable to testify that no citation had ever been issued in Baltimore

charging a stevedore who had used soap with a violation of the regulations. The court suggested that it would consider admitting the testimony of a higher official who was qualified to interpret the regulation but no such witness was produced. With the case in this posture we think the court acted properly in excluding incompetent evidence. Testimony of one whose duty it was to interpret the regulation would be relevant but Proctor's testimony could neither prove nor disprove the applicability of the regulation to the stevedore's use of soap. Nor do the cases cited by defendant persuade us to its point of view. In Clemons v. United States, 245 F.2d 298 (6 Cir. 1957), relied upon by American, the defendants had been convicted of violating a provision of a treaty and regulations issued pursuant thereto despite the fact that they received a letter from the Assistant Secretary of the Interior which seemed to justify their conduct. The court refused to consider the contents of the letter, holding that such was not a binding interpretation of the administrative regulation. We are unable to find support in *Clemons* for American's position here. That case did not deal with the question of whether an official charged with the *enforcement* of a regulation was competent to testify as to its interpretation.

McLaren v. Fleischer, 256 U.S. 477, 41 S.Ct. 577, 65 L.Ed. 1052 (1921), and Bowles v. Mannie & Co., 155 F.2d 129 (7 Cir. 1946), also cited by defendant, stand for the proposition that the interpretation of statutes and regulations by the agency charged with their administration is entitled to respect and weight but those courts were not concerned with the competency of the testimony of a witness where interpretation was involved. Therefore, we find no error in the district court's refusal to admit Proctor's testimony.

It is next contended by American that the court erred in not directing a verdict in favor of the defendant and third party on the issues of unseaworthiness, negligence, and contributory negligence. Defendant's theory is that even if the presence of soap on the deck was negligence or rendered the ship unseaworthy it is not liable unless there was a showing that it knew or should have known of the presence of the condition and that there is no evidence on this point.

Defendant misconstrues the law relating to unseaworthiness. In Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), the Supreme Court reversed a decision in which the district court instructed the jury that before the shipowner was liable for unseaworthiness the jury must find that the shipowner knew or should have known of the presence of a slippery substance on the ship's rail. In reversing, the Court reviewed the history of the action of unseaworthiness and concluded that "[w]hat has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence." Id. at 550, 80 S.Ct. at 933. The Court pointed out that its decision in Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954), was specific authority for the proposition that "the shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability." Id. at 549, 80 S.Ct. at 933. In Grzybowski v. Arrow Barge Co., 283 F.2d 481 (4 Cir. 1960), plaintiff, a longshoreman, was injured when a pack of steel being lowered into the hold caught his leg against the ship's bulkhead. He tried to jump upon the pack but his foot slipped on soap which had been used to coat the dunnage as a lubricant. The jury, which rendered a verdict for the shipowner, was instructed that the doctrine of unseaworthiness did not require the shipowner to keep the ship "absolutely free at all times from transitory, occasional or immediate unsafe conditions resulting from their use". We reversed on the basis of the Supreme Court's decision in *Mitchell,* holding that "in determining seaworthiness, no significance attaches to the fact that no one complained of the alleged unsafe condition. Neither notice of the condition nor lack thereof was material." 283 F.2d at 486 There-

fore, American's contention that a directed verdict should have been granted on the issue of *unseaworthiness* because it had no actual or constructive knowledge of the presence of the soap on the deck is effectively foreclosed by the Supreme Court's unequivocal decision in Mitchell v. Trawler Racer, supra, and this court's decision in Grzybowski v. Arrow Barge Co., supra.

■ On the issue of *negligence* defendant is, of course, correct in asserting that it is not liable unless there was evidence establishing that it either knew or should have known of the presence of the soap on the deck. But a directed verdict can be granted only when, without weighing the credibility of witnesses, there can be but one reasonable conclusion as to the verdict. Brady v. Southern Railway Co., 320 U.S. 476, 479–480, 64 S.Ct. 232, 88 L.Ed. 239 (1943). In deciding this question the party against whom the motion for directed verdict is made is entitled to the benefit of every inference which reasonably may be drawn in his favor. Richmond Television Corp. v. United States, 354 F.2d 410, 414 (4 Cir. 1965). There was evidence that Captain Mahany was in charge of the loading operation on behalf of the ship. He testified that while he was not aware that soap was being used to move the tinplate, he was aware that soap was used under heavy lifts for easier stowing. Mahany also stated that his function was to insure that the cargo was loaded properly. However, he did not give the loading of the tinplate very much attention because, in his opinion, it was a routine job and he was able to observe it from above.

It seems that considering the evidence in the light most favorable to plaintiff this testimony was sufficient to create an issue of fact as to whether the shipowner should have known of the existence of a hazardous condition on the deck of the hold.

Nor does the evidence establish that plaintiff was contributorily negligent as a matter of law. It is contended that plaintiff's accident was proximately caused by his failure to check his shoes and his jumping from the platform. However, there was evidence that the forklift blades scraped soap from the dunnage and caused it to drop on the floor in the area where plaintiff jumped. While plaintiff's method of descent contributed to his injury, the slippery floor caused by the presence of the soap cannot be dismissed as a causal factor. Since the plaintiff's contributory negligence was not an absolute bar to recovery the court was correct in denying the motion for a directed verdict on this issue.

■ We turn to defendant's contention that the court erred with respect to its instructions to the jury. The court instructed the jury that it could consider a violation of section 9.91(c), supra, of the Safety and Health Regulations for Longshoring as evidence of unseaworthiness or negligence. Defendant assails this portion of the charge as reversible error. In Provenza v. American Export Lines, Inc., supra, 324 F.2d 660, the district court refused to instruct the jury on the effect of these regulations and we reversed, holding that it would be incongruous to suppress from the jury knowledge of regulations whose purpose was to insure safe working conditions for longshoremen. The court reasoned that no new duty is created where none existed before and no existing duty is to be excused, "but the regulation's requirement may be considered by the trier of fact in determining whether its nonperformance has resulted in a failure to meet a duty incumbent upon the defendant * * *." 324 F.2d at 666. Defendant urges us to overrule *Provenza* on the basis of the dissent and because regulation 9.91(c) does not apply to the use of soap. Defendant has not established the latter proposition since it introduced no testimony as to the regulation's scope or interpretation.

The Supreme Court denied certiorari in *Provenza* and this court has had no occasion to review it. It has been followed by the Second Circuit in Reid v. Quebec Paper Sales & Transportation Co., Ltd., 340 F.2d 34 (1965), and the

Fifth Circuit in Marshall v. Isthmian Lines, Inc., 334 F.2d 131 (1964). Defendant has advanced no argument which disturbs or undermines the well-reasoned foundation of *Provenza* and we are not disposed to depart from its holding. We find no error in the court's charge respecting the regulation.

Defendant's next contention is that the court erred in refusing to instruct the jury that it could consider the custom in the port of Baltimore as to the use of soap in determining whether what was done by the defendant was reasonably safe and that the jury could find that soap makes the ship unseaworthy only upon a finding that such use created an unreasonable danger. We think the court properly refused to charge as requested.

The Supreme Court has pointed out that the shipowner's duty to provide a seaworthy ship and appurtenances is an absolute, nondelegable duty owing to all within the range of its humanitarian policy. Mitchell v. Trawler Racer, Inc., supra, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1116 (1946), specifically extended this duty to longshoremen. There are what may appear to be conflicting decisions within this circuit on the question of the relevancy of customary practices and procedures in determining liability for injuries. Compare Burgess v. Farrell Lines, Inc., 4 Cir., 335 F.2d 885 (1964), with Bryant v. Partenreederei-Ernest Russ, 4 Cir., 330 F.2d 185 (1964). However, it is not necessary to resolve this conflict because in the instant case a regulation existed which placed upon shipowner and stevedore alike the affirmative duty to eliminate slippery conditions. In view of this regulation it would have been confusing to charge that the jury could consider a violation of the regulation as evidence of unseaworthiness while, at the same time, the jury could consider the custom and practice in Baltimore which violated the regulation.

Furthermore, in Grzybowski v. Arrow Barge Co., supra, 283 F.2d 481, this court considered whether *the use of a similar soap by stevedores in Baltimore harbor* could render the ship unseaworthy. We held that if the jury found that there existed a slippery condition resulting from the use of soap, it should determine further whether such condition rendered the ship unseaworthy, and whether plaintiff's injury was caused by such unseaworthiness. 283 F.2d at 486. No issue was presented in *Grzybowski* as to *general* custom and usage in Baltimore harbor but there was evidence to the effect that the stevedore supplied its employees with soap for use in lubricating skids.

Defendant also argues that the court erred in submitting a special interrogatory to the jury concerning the violation of section 9.91(c). The interrogatory stated "3(a). Was Section 9.91 (c) of the Safety and Health Regulations for Longshoring violated by Atlantic & Gulf Stevedores, Inc.?" The jury answered "Yes." Part (b) stated "If so, was such violation a proximate cause of the injury sustained by the plaintiff?" The jury also answered "Yes." It is argued that the effect of this interrogatory was to mislead the jury into believing that there was a third theory upon which liability could be predicated—a violation of the regulation—when, in fact, there were only two—negligence and unseaworthiness.

Rule 49(a) of the Federal Rules of Civil Procedure provides that the court "may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact." Under Rule 49(a) the court has complete discretion as to whether a special or general verdict is to be returned. This discretion has been held to extend to the form of the special interrogatories. Scott v. Isbrandtsen Co., Inc., 327 F.2d 113, 119 (4 Cir. 1964); Norfolk Southern Ry. Co. v. Davis Frozen Foods, Inc., 195 F.2d 662, 666 (4 Cir. 1952); Mourikas v. Vardianos, 169 F.2d 53, 57 (4 Cir. 1948); McDonnell v. Timmerman, 269 F.2d 54, 58 (8 Cir. 1959); 5 Moore's Federal

Practice, ¶ 49.03, at 2204–2206 (2d ed. 1966).

The court complied with the rule adhered to in this circuit that each question in the interrogatory be simple, clear and contain only one issue. Scott v. Isbrandtsen, supra, 327 F.2d at 122–123; Scarborough v. Atlantic Coast Line R. Co., 190 F.2d 935, 938 (4 Cir. 1951).

We do not think that the interrogatory as submitted could have confused the jury in light of the court's clear statement, made in the charge, that "[t]his suit is based upon two separate and independent grounds, namely, the claim of unseaworthiness, number one, and the claim of negligence, number two." The jury specially found that defendant was liable on the theories of unseaworthiness and negligence, the two theories which were unquestionably and indisputably the paramount issues in the case.

 Having determined that the defendant was liable for plaintiff's injuries, the jury further found that plaintiff's own negligence contributed to his injury and proceeded to decrease his award by ten percent. The defendant contends that the jury's failure to decrease the award by a greater percentage was against the weight of the evidence. The shipowner and stevedore cite Keel v. Greenville Mid-Stream Service, Inc., and M/V ARK CITY, 321 F.2d 903 (5 Cir. 1963); and Testa v. Moore-McCormack Lines, Inc., 229 F.Supp. 154 (S.D.N.Y.1964), to support this contention. In each of these cases the court sitting in admiralty as trier of fact without a jury found no unseaworthiness and no negligence on the part of the shipowner and, further, that the plaintiff's negligence was the proximate cause of his injury. In *Keel* the appellate court, following the "clearly erroneous" rule, affirmed the trial court. These decisions did not involve a situation where the trier of fact had found liability of the shipowner based on unseaworthiness and negligence and that plaintiff's negligence had contributed to his injury. Nor is there any discussion in either concerning the sufficiency of evidence in a case where the trier of fact had applied the comparative negligence rule to reduce the plaintiff's damage award by reason of his contributory negligence. In the instant case the jury as trier of fact found that the vessel was unseaworthy and that the shipowner was negligent. As indicated in our previous discussion, there was sufficient evidence to support such findings. The extent to which plaintiff's negligence contributed to his injuries was primarily a question of fact solely for resolution by the jury. The authorities cited to support this last contention are distinguishable and unpersuasive. The verdict and judgment will not be disturbed.

Affirmed.