John T. LAWSON, Appellee,

v.

UNITED STATES of America,
Appellant.

No. 77–2510.

United States Court of Appeals,
Ninth Circuit.

Aug. 21, 1979.

Before KILKENNY and ANDERSON, Circuit Judges, and JAMESON, District Judge.*

KILKENNY, Circuit Judge:

This is an appeal by the United States from a judgment entered against it under the provisions of 33 U.S.C. § 905(b) in an action bringing into play the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 86 Stat. 1251. After waiver of a jury, the district court tried the case and entered judgment against appellant for the sum of $121,-734.00, together with costs incurred in the action, but reduced the said judgment by 40% on account of the contributory fault of appellee, leaving a total judgment of $73,-040.00 in appellee's favor. The United States appeals. We affirm.

## FACTUAL BACKGROUND

Although the facts surrounding the appellee's accident were in dispute in the proceeding below, for the purposes of this appeal, the appellant accepts the district court's findings of fact, and challenges only its legal conclusions.

We summarize the district court's findings as follows: the USS HANCOCK is a naval aircraft carrier owned and operated by appellant and at all relevant times herein mentioned was berthed in navigable waters at the U. S. Naval Air Station, Alameda, California. Prior to June 10, 1974, appellant hired Triple A Machine Shop, Inc. [AAA] as a ship repair contractor and assigned to it the task of repairing and replacing fuel pipes in the bilges of the HANCOCK. In connection therewith the respective parties executed a written con-

Eloese E. Davies, Appellate Sec., Civ. Div., Dept. of Justice, Washington, D. C., for appellant.

Morton L. Silvers, San Francisco, Cal., John T. Lawson, San Francisco, Cal. (argued), for appellee.

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

tract entitled "Master Contract for Repair and Alteration of Vessels, Re USS HANCOCK." In this master contract, appellant directed AAA to comply fully with the safety and health regulations for ship repairing promulgated by appellant's Secretary of Labor pursuant to 33 U.S.C. § 941 and reserved to itself the power to inspect and control the operative details of the manner in which AAA performed the assigned ship repairs. Furthermore, it reserved to itself the right to forbid dangerous practices of AAA creating an unreasonable risk of harm to its invitees, including the appellee. Appellant had the power to terminate the contract in the event of failure of AAA to remedy dangerous conditions. Appellant also retained sufficient authority and control of the work of AAA to correct any dangerous practice made known to it.

The repair work commenced in mid-April, 1974, and continued through June 10th of the same year and thereafter. During the period of repair, AAA engaged the appellee as a pipefitter and assigned to him the repair work in the bilge areas of the vessel. On June 10, 1974, while doing his assigned work, appellee slipped on an oil covered fuel pipe upon which he was required to walk because there were no planks for a walkway or a working platform and no safety rope or guard rail to prevent his fall, all of which resulted in severe bodily injuries to the appellee.

The district court found that the presence of the slippery fuel oil on the pipes where appellee was required to work and the absence of safety ropes, guard rails, planked walkways or platforms constituted a dangerous condition necessarily involving a substantially unreasonable risk of serious bodily harm. This was true, even if the premises upon which the accident occurred had been used with due care in a manner in which it was reasonably foreseeable to appellant that such premises would be used by workmen, including the appellee.

The court further found that the injuries which appellee suffered were proximately caused as a natural and probable consequence of the dangerous condition. These injuries occurred in a way which was reasonably foreseeable to the appellant and had it not been for such dangerous condition, appellee's injuries would not have occurred. The court went on to find that the dangerous condition was directly attributable, in substantial part, to the failure of appellant's officers and employees to exercise ordinary care to compel AAA to remedy the dangerous condition and to protect appellee from exposure to an unreasonable risk of harm. The same officers and employees had actual and constructive notice of the dangerous condition a sufficient time before the inquiry to have taken measures to protect against it and had the authority and in the ordinary course of their employment could have corrected the condition and taken such measures with means immediately available to them.

The actual knowledge of the dangerous condition by appellant's officers and employees consisted of actual personal knowledge of the existence of the condition and the knowledge of its dangerous character. Moreover, they had reason to know of its dangerous character by the exercise of ordinary prudence. Likewise, appellant's officers and employees had constructive notice of the dangerous condition by exercising their right to inspect the area of the accident to determine whether such conditions existed in such areas. This condition had existed for such a period of time and was of such an obvious nature that each officer and employee in the performance of his authority and responsibility to exercise due care should have discovered the condition and its dangerous character.

The court also found that, before appellee's injuries, AAA refused to comply with and had not substantially complied with safety and health regulations for ship repairing, 29 C.F.R. §§ 1915.43(e), 1915.47, 1915.51(a), (c), and 1915.54, in that throughout the repair period large sections of the bilge area where a deck plate had been removed lacked planked walkways, work platforms, safety ropes, guard rails, or safe passageway free of slippery fuel oil where workmen, including appellee, were com-

pelled to work. Appellant's officers and employees had actual and constructive notice of such refusal or failure sufficiently prior to appellee's injury to have stopped the work of AAA or to have taken other reasonable means then available to compel AAA to comply with the regulations. Throughout the repair period, appellant's officers and employees knew and by the exercise of reasonable diligence should have known that compliance with such regulations was feasible, practicable, and required by the master contract. In sum total, the court found that appellant's officers and employees substantially failed to require performance of the ship repairs in the usual and customary manner in that they allowed work under circumstances substantially in defiance of 29 C.F.R. § 1915, *et seq.* Additionally, during said period, appellant's officers and employees failed to exercise ordinary care in the management of the vessel to avoid exposing invitees thereon, including the appellee, to an unreasonable risk of harm.

The court found that throughout the repair period and to, and including, the moment when appellee was injured, the appellant knew that appellee's work involved an unreasonable risk of harm to himself and it knew that he could not perform his work and at the same time protect himself against such unreasonable risk of harm. Appellant, its officers and employees, knew or by the exercise of due care should have foreseen harm to the appellee despite the obviousness of the dangerous condition and appellee's knowledge thereof.

The court further noted that throughout the repair period and to and including the time appellee was injured, the appellant's officers and the employees were acting in the course and scope of their employment with appellant and during all such periods exercised a right of control over the conditions and activities by daily inspecting and issuing job orders directing the manner in which appellant's own employees and those of AAA engaged in performing ship repair work and in maintaining the passageways. During said period, appellant's officers and employees failed to exercise reasonable care in the use of their right to control the operative details of the manner in which the work was performed and of the manner in which the common passageways and work areas in which the appellee was working were kept.

The court also found that appellee was fully aware of the oily, greasy pipes and was walking on said pipes with wet boots. He had been working in this condition for five or six weeks prior to the accident. The fall occurred when he climbed to a shelf and then proceeded from the shelf to the oily surface of the pipe where he slipped, lost his balance, and fell to the deck. He was aware of these dangerous conditions and placed himself in a position where he contributed to his fall and subsequent injuries.

Appellee was treated for his injuries in a hospital by qualified doctors. As a result of his fall, the appellee sustained an injury to the L–4 disc of his spine with a bulging of that disc which produced irritation to the nerve roots involving the lower right extremities, resulting in impaired mobility of the back and a considerable amount of pain. The court found that the reasonable value of the medical, hospital, nursing care services, and supplies reasonably required and actually given in the treatment of appellee was $11,285.72. Appellee was on minimal medical treatment at the time of the trial. With the exception of one day since the date of the injury he has been unable to return to his occupation as a pipefitter. Subsequent to the accident, appellee was unwilling to follow his doctor's advice and did little to mitigate his own damage, thereby aggravating his own incapacity.

Our examination of the record convinces us that the record contains substantial evidence supporting the findings above summarized. Moreover, as stated supra, for the purposes of this appeal, appellant *concedes* that the record supports the court's findings of fact. It challenges only the conclusions of law.

The district court concluded: that appellant owed a duty of reasonable care to the appellee; that appellant breached its duty

of care toward appellee by failing to exercise ordinary and reasonable care to protect the appellee from harm while appellee was working under highly dangerous conditions; and that such breach of duty was the proximate cause of the appellee's injury and damage. The court also concluded that the appellee himself was 40% at fault. It reduced the reward accordingly. The court's conclusions were based on the provisions of the Longshoremen's and Harbor Workers' Act, 33 U.S.C. § 905(b) and the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.* and also under general maritime law. As a final conclusion, the court awarded the appellee the net sum of $73,040.00, plus costs.

## ISSUES

We state the issues as follows:

I. Was appellant guilty of negligence as that word is employed in 33 U.S.C. § 905(b)?

II. Is appellant relieved of liability on account of the concurring negligence of the stevedore AAA?

III. Is appellant relieved of liability by reason of the fact that the condition which caused the appellee's injury was open and obvious?

IV. Did the district court err in considering AAA's non-compliance with the safety and health regulations for ship repairing, 29 C.F.R. § 1915.43(3), *et seq.* in passing on the negligence of the appellant?

## I.

■ Our review of a finding of negligence is governed by the clearly erroneous standard. *Mattschei v. United States,* 600

F.2d 205, 208 (CA9 1979); *Miller v. United States,* 587 F.2d 991, 994 (CA9 1978).

In an exhaustive opinion by Judge Duniway, the Ninth Circuit adopted the following standard of negligence for the purposes of 33 U.S.C. § 905(b) [1] actions, to wit:

"A vessel is subject to liability for injuries to longshoremen working on or near the vessel caused by conditions on the vessel if, but only if, the shipowner

(a) knows of, or by the exercise of reasonable care would discover, the condition, and should realize that it involves an unreasonable risk of harm to such longshoremen, and

(b) the shipowner fails to exercise reasonable care under the circumstances to protect the longshoremen against the danger."

*Santos v. Scindia Steam Navigation Co.,* 598 F.2d 480 at 485 (CA9 1979).

Manifestly, the findings of the district court, fully supported by the evidence in the case, fall within the standards fixed in *Santos.* It is clear that appellant's officers and employees actually knew of appellee's working conditions. Moreover, it is obvious that they knew that the conditions clearly violated the regulations and created an unreasonable risk of harm to appellee. Furthermore, there is ample evidence that appellant, as the ship owner, failed to exercise reasonable care under the circumstances to protect the appellee against the danger involved under these circumstances.

Applying the negligence standard set by *Santos,* we hold that the findings of the district court that the ship owner was guilty of negligence are supported by the record and are not clearly erroneous.

---

1. 33 U.S.C. § 905(b).

"*In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person,* or anyone otherwise entitled to recover damages by reason thereof, *may bring an action against such vessel as a third party* in accordance with the provisions of section 933 of this title, *and the employer shall not be liable to the vessel for such damages directly or indirectly* and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." [Emphasis supplied.]

## II.

 The appellant urges that the conceded negligence of the stevedore bars recovery by the appellee. This issue was thoroughly analyzed and decided against appellant's contention in the recent case of *Edmonds v. Compagnie Generale Transatlantique,* —— U.S. ——, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), in which the Supreme Court held that the 1972 amendments were not intended to change the judicially created admiralty rule that the shipowner could be made to pay all damages not due to the worker's *own* negligence and that the Congress had no intention of imposing a proportionate fault rule. It is there held that the court would not change the traditional rule so as to make the vessel liable only for the damages in proportion to its own negligence.

## III.

 Appellant's contention that it should be relieved of liability by reason of the fact that the condition which caused appellee's injuries was open and obvious are resolved against it in *Santos, supra,* where it is said:

"Finally, Congress 'intend[ed] that the admiralty rule which precludes the defense of "assumption of risk" in an action by an injured employee shall also be applicable.' House Report at 4705, Senate Report at 12." 598 F.2d at 485.

Judge Duniway's standard follows the Restatement (Second) of Torts, § 343(a) and (c), but specifically eliminates § 343(b) and § 343A which involve contributory negligence and the "open and obvious" assumption of risk standards. We conclude that *Santos* controls our facts and properly denies the open and obvious assumption of risk defense.

## IV.

 Finally, appellant charges that the district court erred in holding that the United States as the vessel owner was liable for the ship repair contractor's non-compliance with the safety and health regulations for ship repairing, 29 C.F.R. § 1915.43(e), 1915.-47, 1915.51(a), (c), and 1915.54. These sections encompass the failure to provide planked walkways, work platforms, safety ropes, guard rails, or safety passages free of slippery fuel oil where workmen have to work. As recently as *Bachtel v. Mammoth Bulk Carriers,* 605 F.2d 438 (CA9 1979), we held that it was proper to consider violations of the safety regulations in determining whether a shipowner was guilty of negligence under the provisions of § 905(b) and under the standard of negligence in *Santos, supra.* The district court properly considered these regulations. *See, Venable v. A/S Det Forenede Dampskibsselskab,* 399 F.2d 347, 353 (CA4 1968); *Boleski v. American Export Lines, Inc.,* 385 F.2d 69, 74 (CA4 1967); and *Provenza v. American Export Lines, Inc.,* 324 F.2d 660, 665 (CA4 1963).

## CONCLUSION

In the light of the above, we find it unnecessary to speak on the other contentions raised by appellant.

Finding no error, we affirm the judgment of the district court.

IT IS SO ORDERED.