Charles V. BOWEN, Appellee,

v.

UNITED STATES POSTAL
SERVICE, Defendant,

and

American Postal Workers Union;
AFL–CIO, Appellant.

Charles V. BOWEN, Appellee,

v.

UNITED STATES POSTAL
SERVICE, Appellant,

and

American Postal Workers Union;
AFL–CIO, Defendants.

Nos. 79–1455, 79–1464.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 9, 1980.

Decided Feb. 23, 1981.

Patrick J. Riley, Washington, D. C. (Daniel B. Jordan, Cafferky, Powers, Jordan & Lewis, Washington, D. C., on brief), for appellant American Postal Workers Union, AFL–CIO.

Bruce Joel Jacobsohn, Senior Asst. Regional Labor Counsel, U. S. Postal Service, Philadelphia, Pa. (Thomas R. King, Jr., Asst. U. S. Atty., Roanoke, Va., Stephen E. Alpern, Associate General Counsel, U. S. Postal Service, Washington, D. C., on brief), for appellants.

William B. Poff, Roanoke, Va. (Bayard E. Harris, Betty Jo Anthony, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and HALL and MURNAGHAN, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Plaintiff-appellee, Charles V. Bowen, on February 21, 1976 was indefinitely suspended, without pay, from employment with appellant United States Postal Service (Service or appellant)[1] in Lynchburg, Virginia, for an alleged assault upon a co-employee during an altercation with him. At that time Bowen was a member of the American Postal Workers Union, AFL–CIO, (Union or appellant). It was the recognized collective bargaining agent of the Service employees under a written national contract and the unit with which Bowen filed a grievance challenging his suspension. Refused reinstatement, Bowen brought this action, December 14, 1976, in the United States District Court for the Western District of Virginia for damages against the Service[2] and

---

1. 39 U.S.C. § 201: "There is established, as an independent establishment of the executive branch of the Government of the United States, the United States Postal Service."

2. 39 U.S.C. § 409:

    \*    \*    \*    \*    \*    \*

(b) Unless otherwise provided in this title, the provisions of title 28 relating to service of process, venue, and limitations of time for bringing action in suits in which the United States, its officers, or employees are parties, and the rules of procedure adopted under title 28 for suits in which the United States, its officers, or employees are parties, shall apply in like manner to suits in which the Postal Service, its officers, or employees are parties.

(c) The provisions of chapter 171 (28 U.S.C. §§ 2671–2680) and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service.

    \*    \*    \*    \*    \*    \*

28 U.S.C. § 2674: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

28 U.S.C. § 1346:

the Union.[3] The complaint charged the former with wrongful suspension and the latter with breach of its duty to fairly represent Bowen's collective bargaining interests through conference, arbitration or otherwise.

The District Court submitted to a special trial jury interrogatories which in substance embodied the complaint and the traversing defenses of the Union. The question of the right or wrong of Bowen's suspension by the Service was also posed in these interrogatories to the same jury, but then sitting as an advisory panel.[4] The responses of the trial jury, resting on a preponderance of the evidence as instructed by the Court, upheld all of Bowen's claims against both defendants. The findings and conclusions of the trial judge on the advisory verdict avouched the rightfulness of Bowen's claims against the Service.

Approving these verdicts, findings and conclusions, the District Court entered judgment as follows:

(1) That the suspension of Bowen by the Service was in actuality a discharge;

(2) That the Service discharged Bowen without cause, in abrogation of the collective bargaining agreement, and that the conduct of both the Union and the Service was in "reckless and callous disregard" of Bowen's rights;

(3) That Bowen is entitled to reinstatement to his former employment with the Service and to reimbursement for his resulting loss of earnings and fringe benefits from February 21, 1976 (date of discharge) to December 20, 1978 (date of trial) in the amount of $47,000.00, as fixed by the jury, plus the sum of $5,954.12 added by the trial judge for similar losses between December 20, 1978 and April 11, 1979 (hearing on post trial motions);

(4) That if Bowen's grievance had been arbitrated by the Union as provided in the collective agreement he could have been reinstated by approximately August 1977 but, because of his discharge and despite his repeated efforts, he has been unable to ob-

\* \* \* \* \* \*

(b) Subject to the provisions of chapter 171 (28 U.S.C. §§ 2671–2680) of this title, the district courts, . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

\* \* \* \* \* \*

**3.** 29 U.S.C. § 159:

(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a

collective-bargaining contract or agreement then in effect; *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment.

\* \* \* \* \* \*

29 U.S.C. § 185:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

\* \* \* \* \* \*

(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

\* \* \* \* \* \*

**4.** 28 U.S.C. § 2402: "Any action against the United States under section 1346, *supra* note 2, shall be tried by the court without a jury, . . ."

tain other employment since February 21, 1976;

(5) That Bowen's wage-loss of $47,000.00 should be indemnified by the Union to the amount of $17,000.00 and by the Service in the sum of $30,000.00, and the Service alone should reimburse him for the further loss of $5,954.12;

(6) That Bowen recover punitive damages from the Service and the Union;[5] and

(7) That counsel fees and court costs be awarded Bowen against the Service and the Union.

### ERRORS ASSIGNED ON APPEAL

Errors in the judgment's monetary adjudications are pressed by the appellants. However, upon study of èach of them we hold them insufficient in law or fact to warrant modification of the judgment, save in the following instance:

■ I. As Bowen's compensation was at all times payable only by the Service, reimbursement of his lost earnings continued to be the obligation of the Service exclusively. Hence, no portion of the deprivations—$47,000.00 plus $5,954.12—was chargeable to the Union. Cf. Vaca v. Sipes, 386 U.S. 171, 195, 87 S.Ct. 903, 919, 17 L.Ed.2d 842 (1967).[6] As well, too, the Service must comply with the final mandate of the District Court:

(3) Defendant USPS is directed to reinstate plaintiff within sixty (60) days from entry hereof to his same and previous or a similar position, within the Virginia District, Eastern Region, at a location and facility to be determined by the defendant USPS subject to the approval of this Court, such reinstatement to include full seniority from the date of plaintiff's suspension, February 21, 1976. If reinstatement is approved for any facility other than the Lynchburg, Virginia facility, the plaintiff's seniority date for contractual benefits shall be the same as that held at the Lynchburg facility.

(4) If defendant USPS continues to deem reinstatement impractical, as an alternative to reinstatement, plaintiff is to be awarded his future loss of earnings to be paid by the defendant USPS in the amount of $125,000 with interest at the legal rate from April 11, 1979.

■ II. Error is ascribed to the reception at trial of the testimony of Gladys Wilkes Johnson, called to the stand by Bowen, as an expert on labor relations and arbitration, to give evidence upon the factors essential and requisite to constitute fair representation by a union. We see nothing amiss in the allowance of this proof and, furthermore, even if error, it would be but harmless, not justifying a reversal of the District Court. Fed.R.Civ.P. 61.

At all events the testimony was admissible for its relevance. The fundamental accusation by Bowen was that the Union "had breached its duty of fair representation." Johnson, speaking to the instantly proven facts, testified that the Union's conduct evinced a prejudicial indifference and irreverence to this obligation. In her opinion, the Union should have sent Bowen's claim to arbitration, if he was to be assured of a fair hearing on the validity of his termination by the Service.

Next, she qualified as one well informed upon the factual considerations integral in a union's duties. Before permitting Johnson as an expert to give an opinion on what constitutes fair representation by a union, the District Judge permitted close and in-depth questioning into her background and knowledge of the subject. This exploration revealed that she had participated in the preparation and presentation of arbitrations for almost 20 years. In this period she had been active as a member and president of a local union of 430 members. In an attempt to impeach this qualification, opposing counsel observed in cross-examination that the Union in this case had a membership of several thousand and so was not compar-

---

5. Punitive damages are not assessable against the Service as an agency of the United States. See 28 U.S.C. § 2674, supra note 2. They were denied as against the Union as unfair in view of the Service's immunity and are not an issue in this appeal.

6. We make no revision in the judgment of $22,954.12 against the Postal Service. In this connection we note that no appeal was entered by the plaintiff from the judgment against the Service in the amount of $22,954.12.

ably within her experience. Overruling the objection the presiding judge commented:

> But the duty is the same regardless of the union, and that is to give fair representation to the members of the union in these procedures. And it applies to the Postal Union, and it applies to the union that this lady represents. She's been in this business, she says, for twenty-some years. Now, I'm going to qualify her as an expert and I'm going to permit her to testify as to her opinion as to whether or not this case—I guess she's examined the file, have you not?

Furthermore, in his charge to the jury he ensured the appellants full protection against intrusion upon the privilege of a defendant not to be subjected to the surmise of a witness. The instruction rigidly narrowed the evaluation to be given the Johnson evidence by the jury:

> I would tell you that normally the rules of the evidence do not permit a witness to testify as to their opinions or conclusions. An exception to this rule exists, however, as to those whom we refer to as expert witnesses. Witnesses who by education and experience have become expert in some art, science, profession or calling, may state their opinion as to relevant and material facts in which they profess to be expert. And they may also give to you the reasons for their opinions. You should consider any expert witness received in evidence in this case, and give it such weight as you may think it deserves.
>
> If you should decide that an opinion of a so called expert witness is not based upon sufficient education or experience, or if you should conclude that the reasons given in support of the opinion are not sound, you may reject the opinion entirely.
>
> After making your own judgment, you will give the testimony of each witness just such credibility as you may think it deserves.

The admissibility *vel non* of the testimony was to be resolved by the District Judge; it was "within the broad discretion of the trial judge and his action is to be sustained unless manifestly erroneous." *Boleski v. American Export Lines, Inc.*, 385 F.2d 69, 71 (4th Cir. 1967).

Rule 702, Federal Rules of Evidence confirms the propriety of such testimony in trial:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

For the reasons herein recited, the judgment of the District Court will be affirmed throughout, except in regard to the error discussed in section I, *infra*, with respect to which the action will be remanded for amendment of the judgment consistently with this opinion.

Affirmed in Part;
Reversed in Part; and
Remanded.

MURNAGHAN, Circuit Judge, dissenting:

A district judge retains wide latitude in deciding whether and over what subjects a particular witness qualifies as an "expert" under Rule 702 of the Federal Rules of Evidence. *See Boleski v. American Export Lines, Inc.*, 385 F.2d 69, 71–72 (4th Cir. 1967):

> An expert has been defined as one who has acquired special knowledge of the subject matter about which he is to testify, either by study of the recognized authorities or by practical experience and who can assist and guide the jury in solving a problem which the jury is not able to solve because its knowledge is inadequate. 20 Am.Jur. § 783, p. 656. In *Cranston Print Works Co. v. Public Service Co. of North Carolina*, 4 Cir., 291 F.2d 638, 645 (1961), we approved the statement made in *Padgett v. Buxton-Smith Mercantile Co.*, 262 F.2d 39 (10 Cir. 1958), that "expert testimony is admissible if it reasonably tends to aid the trier in the resolution of the decisive issue, and is not a mere guess or conjecture." 262 F.2d at 41.

However, manifestly there are limits to such discretion. In the instant case, I conclude that the district judge exceeded his authority in qualifying the plaintiffs' witness as an expert on labor relations of the type involved in the case. Because the defendants were unfairly prejudiced by her "expert" testimony, I would reverse and remand for a new trial.

The crux of the case was the adequacy or inadequacy of representation of the plaintiff by the defendant national Union. Testimony established that, following his dismissal, Bowen filed a grievance with his local, whose president recommended to the regional office that the Union press the grievance. In turn, the regional office recommended to the national office that the grievance be certified for arbitration. The national office, after a 15–30 minute review of the 67-page and cassette tape case file, refused to certify the case for arbitration. A factor allegedly taken into account was the national Union's awareness, from the outcome in prior cases, of the extremely remote likelihood of success.

At trial, Bowen contended that the above events demonstrated that the Union failed to fulfill its duty to represent him fairly. To support his arguments, he produced Gladys Johnson, claiming for her the status of an expert witness. Over objection, she gave her opinion that the Union's treatment of Bowen's grievance was improper as well as expressing her belief that an arbitrator would ultimately have decided the grievance in Bowen's favor, had the Union pressed it.

Ms. Johnson's qualifications to testify as an expert in the areas to which the opinions she expressed pertained were as follows: (1) she served a local union not connected with the American Postal Workers Union as President for six years and Secretary for six years; (2) during the twelve year period, she served on the local grievance committee charged with processing and sometimes arbitrating local employee grievances; (3) she had on occasion assisted in the preparation of arbitration cases on the local level; and (4) she had attended her union's labor relations school. As the list indicates, Ms. Johnson's experience was gained entirely at the local level. She had had no exposure to methods employed and considerations weighed when, under the applicable grievance procedures, following exhaustion at the local level, the matter was referred first to the regional, and ultimately to the national level.

In determining whether a witness is qualified as an expert, "[t]he test is whether the [expert witness'] education and experience demonstrate a knowledge of the subject matter." *Hill v. Gonzalez*, 454 F.2d 1201, 1203 (8th Cir. 1972). Rule 702 of the Federal Rules of Evidence requires that an expert be qualified "by knowledge, skill, experience, training, or education." *See* 11 Moore's Federal Practice § 702.10[2] (1976). Under that test, Ms. Johnson did not qualify as an expert for the purposes that she was called to testify about. If she had been called to testify regarding a *local* union's duty to its members to represent them fairly, she would almost certainly have qualified as an expert. However, Ms. Johnson was not called upon to express her opinion on the sufficiency of a local grievance practice. Rather, she was asked her views on the sufficiency of a national union's grievance procedures and treatment of Bowen, matters to which she had no demonstrated exposure, no knowledge, no skill, no experience, no training and no education.

Ms. Johnson's experience concerning grievances was two steps removed from the actual decision-making process utilized by the APWU. Her exposure at the local level to employee complaints involved making recommendations to the next level in the union hierarchy. She had never participated in the actual decision even by her own union whether to prosecute a grievance. Finally, she had never presented a case before an arbitrator.

Without some familiarity with the financial and policy constraints on prosecuting grievances, or some contact with the union decision-making level on grievances, or at least some experience in presenting grievances before arbitrators, Ms. Johnson was simply unqualified to give her opinion as an *expert* on the adequacy of the APWU's grievance practices, on its treatment of Bowen's complaint, or on how an arbitrator